## AUBIC v. GIL.

A judgment rendered by default against a wife, in an action on a note by which she bound herself jointly and severally with her husband, will be binding on her, though the note was given for a debt of the husband's, where no fraud or duress is alleged to have been exercised to prevent her appearance and defence of the action.

Where a married woman, for the purpose of shielding certain lands from a creditor conveys them to a third person by a simulated sale, her heirs, on proof of the existence and contents of a counter-letter by which the purchaser acknowledged the simulation, and of its concealment or destruction by the latter, may recover the land, with damages, profits and rents.

APPEAL from the District Court of East Baton Rouge, *Johnson,* J. The plaintiff avers, that her mother was the owner and possessor of certain lands, and that a short time previous to her death, by act *sous seing privé,* she sold the same to defendant; that the property was the paraphernal property of the vendor; that the sale was fictitious, without consideration, and was made for the purpose of protecting the property from the creditors of her husband; and that a counter letter was executed by the defendant, acknowledging its simulation. She prays that the property may be decreed to belong to her. The defendant answered, contending that the contract was entered into for the purpose of protecting the property from *François Rivas,* a creditor; that it was fraudulent and reprobated by law; and that the court can not interfere to protect parties, under such circumstances. The plaintiff appealed from a judgment dismissing her action on the ground that the stipulation, alleged to exist in the counter-letter, being illegal, creates no cause of action.

*G. S. Lacey,* for the appellant. The transfer of the property to defendant was *not fraudulent, nor is it reprobated by law.* This is evident from its *object.* It was made for the purpose of shielding the *paraphernal* property of *Madame Hortense* from the *unjust* law-suits and *persecutions* of her *husband's creditor ;* a stronger case than that of *Griffin* v. *Lopez,* mentioned in 17 La. 128, which the Supreme Court there say, evinces no *immorality or dishonesty* on the part of transferror. The mother of plaintiff took this method to accomplish what the law, by a suit for separation of property, would authorize her to attain, viz: the protection of her *separate* property from her *husband's* creditor. In addition, we will state, that there are several adjudicated cases where such relief as we pray for, has been extended, or would have been, if a counter-letter had been produced; the relief was refused, not on the ground of the *moral turpitude of the original* transaction, but, for the want of a counter-letter, showing that defendant was deviating from the original transaction, and was committing a *new* fraud. 6 Mart. N. S. 206. 8 Ib. N. S. 448. 4 La. 169, 351. 17 La. 128. 19 La. 412. 3 Rob. 452. The counter-letter having been lost, parol evidence of its contents was admissible. Civil Code, art. 2258. 1 Mart. N. S. 189. 2 La. 168. 12 La. 162. Phillips on Evidence, Cowen and Hill's Notes, vol. 3, part 2, and numerous cases there cited.

*Elam,* for the defendant. The contract disclosed by the counter-letter was illegal, and can produce no effect. C. Pract. art. 19. Civil Code, arts. 1887, 1889. *Gravier* v. *Carraby,* 17 La. 118. Counter-letters are not allowed to shield transactions reprobated by law. C. C. art. 2236. Domat, book 3, tit. 6, ss. 14, 15 (1 vol. p. 423). The illegality of the transactions on which plaintiff's action is based, requires that her petition should be dismissed. 5 Mart. 160. 6 Mart. 524. 3 Ib. N. S. 46. 4 La. 169. 19 La. 412. 2 Rob. 272. 3 Rob. 452, 481. 4 Rob. 209. 5 Rob. 490. *Armstrong* v. *Toler,* 11 Wheaton 258, 275.

The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff sues to recover from the defendant a tract of

.and in the vicinity of Baton Rouge, containing about 117 superficial acres, of which she alleges her deceased mother, during the marriage which existed between her and her late father, made a simulated sale to the defendant, for the purpose of protecting it from the unjust and vexatious pursuit of one *François Rivas*, who was a creditor of her husband. She alleges that a counter-letter was given to her said mother, which acknowledged the simulation, and contained authority to enable her mother to recover back the property, which the defendant subsequently obtained possession of and destroyed. There was judgment for the defendant, and the plaintiff has appealed.

Besides the plea of the general issue and an averment of title, good faith, &c., on behalf of the defendant, it is urged for the defence that, admitting the averments of the petition to be true, which is not conceded, the conveyance to the defendant was for an unlawful and immoral cause, that the court can give no assistance in giving effect to its object, and that the evidence shows that the real purpose of the conveyance was to defraud *François Rivas*.

The evidence satisfies us that the conveyance from the plaintiff's mother to the defendant was simulated, and made for the purpose of defeating the execution of a judgment, which was rendered in favor of *François Rivas*, on the 19th June, 1827, for $413 50, with interest, against both husband and wife, the said sum being the amount of a promissory note made by them, *in solido*, in favor of said *Rivas*, on the 21st of April, 1824. The judgment was rendered by default, neither party defendant appearing. The conveyance was under private signature, and executed on the 4th of August, 1826.

The wife was bound by the note which she executed jointly and severally with her husband, although, if the debt for which it was given was her husband's alone, and she merely his surety, she could have resisted the exaction of the amount, by availing herself of her exception to such a contract-resulting from her condition as a married woman. But having made the exception, and no fraud, restraint, or duress, having been charged to be exercised in relation to her non-appearance after citation, the judgment against her must be considered as valid.

At the same time, under the hypothesis on which the plaintiff bases her right of recovery, the law cannot visit upon her the consequences of having made an immoral and illegal contract in conveying the property in dispute from the reach of the creditor of the husband, though he was also her creditor. The condition of married women, their subjection to the marital power, and the relief which the law itself gives them against their own contracts, prevents the same immorality from attaching to an act of this kind, as if committed by a person in the possession of their entire rights. If the husband had the means of inducing his wife to bind herself for his debts, and of preventing her from making a legitimate defence against their recovery out of her property, it may well be assumed that the removal of the property from the pursuit of his creditors, was more his act than her's.

The husband and wife both were parties to the act of conveyance to the defendant. The act of sale by which the mother of the plaintiff acquired the property in dispute declares, that the payments were made and to be made for it out of the paraphernal funds of the wife, and that the property should remain as her paraphernal property. It is in evidence that she had received, during marriage, sufficient paraphernal property to make the payments.

The existence and contents of a counter-letter from the defendant, executed

at or about the time of the conveyance, has been fully established. Its non-appearance has been accounted for. Indeed there is every reason to believe that the defendant, who was the tutor of the plaintiff during her minority, has himself destroyed it, if he has not it in his possession. The evidence shows him throughout to have been a mere spoliator, and the plaintiff's title is sufficient to enable her to recover the land from him, with its rents and profits.

The recovery in this case can have no illegal or immoral effect. Some of the heirs of *François Rivas* have discharged the plaintiff from the original judgment had against her mother, which the conveyance to the defendant was intended to frustrate. The return of the property to the plaintiff will restore it to the operation of the judgment, for the benefit of those of the heirs who have not released the plaintiff.

It is therefore decreed that the judgment of the District Court be reversed, and that the plaintiff recover from the defendant the land described in the petition, with costs in both courts; her claim for damages, profits, and rents, being reserved.